IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DAVID M. STOTT,

                  OPINION and ORDER

       Plaintiff,

                    14-cv-176-bbc

  v.

INTERNAL REVENUE SERVICE,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

  Before the court is defendant Internal Revenue Service's motion for summary judgment, in which defendant opposes plaintiff David Stott's claim under the Freedom of Information Act, 5 U.S.C. § 552, that defendant is withholding documents relating to an administrative forfeiture action against certain currency and precious metals seized from plaintiff's residence. Dkt. #12. Defendant contends that it performed an adequate search for the records responsive to plaintiff's request and properly withheld only those few documents covered by the statute's exemptions. Plaintiff disagrees, arguing that defendant has failed to meet its burden of showing that its search was reasonable. He asks the court to permit him to conduct further discovery concerning the search and to do its own *in camera* review of certain documents for which defendant is claiming a statutory exemption.

  Defendant's motion for summary judgment will be granted because plaintiff has failed to raise a genuine issue of material fact with respect to the adequacy of the record search.

1

Plaintiff's request for further discovery will be denied. It is not necessary to undertake an *in camera* review of the documents withheld and redacted by defendant because defendant has met its burden of establishing that the materials it withheld are exempt under the statute and the record contains no evidence that defendant has acted in bad faith.

Before discussing the merits of the motions, I will take up plaintiff's failure to follow this court's summary judgment procedures and the consequences of that failure. In the preliminary pretrial conference order entered on August 1, 2014, the parties were given specific instructions about how to file and respond to summary judgment motions. Dkt. #7. Besides pointing out important procedures, the order warned the parties of the consequences of the failure to follow the procedures, stating in part that

> If any party files a motion for summary judgment, all parties must follow this court's procedure governing such motions, a copy of which is attached to this order. The court will not consider any document that does not comply with its summary judgment procedure.

Id. at 3. Attached to the order is the court's Procedure to Be Followed on Motions for Summary Judgment, which addresses issues such as the requirements to file proposed facts and how to put into dispute the other party's proposed facts. Id. at 11-15. The court's summary judgment procedures are like the written rules of a game that insure that everyone is playing by the same rules. They also help the court review and address motions by keeping information organized and concise.

Plaintiff did not file a response to defendant's proposed findings of fact or propose any findings of fact of his own. The court's procedure makes it clear that "[u]nless the responding party puts into dispute a fact proposed by the moving party, the court will conclude that the

fact is undisputed." Proc. on Mot. for Summ. Jmt., § II, dkt. #7 at 13. See also Wackett v. City of Beaver Dam, Wisconsin, 642 F.3d 578, 583 (7th Cir. 2011) (upholding similar rule). In the same procedural document, plaintiff was warned that "[t]he court will not consider facts contained only in a brief" or "search the record for evidence." Id. at 12 and 14. For that reason, I will disregard the facts proposed by plaintiff in his brief and adopt defendant's proposed findings of fact as undisputed.

## UNDISPUTED FACTS

On July 25, 2013, defendant executed a sealed search warrant at plaintiff David Stott's home. During the search, agents seized $7,320 in currency and $83,503 in gold, silver and platinum. On September 18, 2013, defendant sent plaintiff a letter stating that an administrative forfeiture action had been initiated against the seized currency and precious metals. However, on October 22, 2013, before any forfeiture had occurred, defendant sent plaintiff a second letter stating that the September 18, 2013 letter had been sent in error and that plaintiff's currency and precious metals were not the subject of a forfeiture action and had been held for evidentiary purposes only. (Pursuant to an order of this court, defendant subsequently returned all of plaintiff's currency and precious metals.)

On November 8, 2013, plaintiff submitted a Freedom of Information Act request dated November 4, 2013, seeking records related to the search and seizure of his property, as well as records relating to the administrative forfeiture action. Defendant denied that request on December 31, 2013. On January 16, 2014, plaintiff clarified the scope of his

request, stating that it did not relate to the investigation of him but only to the abandoned administrative forfeiture action. In a February 5, 2014 response, defendant released to plaintiff the September 18, 2013 and October 22, 2013 letters it had sent him about the forfeiture action.

Plaintiff filed suit in this court on March 5, 2014. Defendant assigned the matter to Procedure and Administration Attorney Sheida Lahabi. A.M. Gulas, senior counsel in defendant's Office of the Associate Chief Counsel, served as Lahabi's reviewer. Under Gulas's direction, defendant conducted a further search for records, which included contacting Teri Schultz, the asset forfeiture coordinator who handled the administrative forfeiture action against plaintiff.

As part of her standard job responsibilities, Schultz received both the July 23, 2013 sealed search warrant for plaintiff's residence and the return of the search warrant, which includes an inventory of items seized during the search. As the asset forfeiture coordinator, Schultz had custody of the documents related to the mistaken administrative forfeiture of plaintiff's property. Because the items seized from plaintiff's residence had an estimated value of more than $500, Schultz followed agency protocol and entered them into the agency's asset inventory system, AFTRAK.

At Lahabi's request, Schultz searched her electronic and hard copy files and produced to defendant all of her records that related to the administrative forfeiture action. Schultz averred that Special Agent Michael Miller was the only person involved in the search of

4

plaintiff's residence with whom she had any email or written communications; she had no email or written communications with Assistant United States Attorney Daniel Graber.

According to senior counsel Gulas, defendant obtained from Agent Miller all of his written communications or other documents relating to the administrative forfeiture action. These documents amounted to only a minimal number of emails. Defendant also determined from Kelly Jackson, who had signed the September 18 and October 22, 2013 forfeiture letters, that she did not have any additional responsive records.

Defendant's record search located 154 pages and four copies of the 32-page sealed search warrant for plaintiff's home. Defendant withheld only four documents in full from plaintiff: the search warrant; the return of the search warrant; a one-page memorandum request by defendant's St. Paul, Minnesota office to the Office of Chief Counsel, Criminal Tax, for legal advice; and a five-page legal memorandum from the Office of Chief Counsel, Criminal Tax to the St. Paul office. Defendant also redacted 28 pages in part, claiming exemptions under the Act.

After learning that plaintiff was challenging the adequacy of defendant's record search, Gulas contacted Supervisory Special Agent Michael Raschella, Richard Myrland in the Criminal Investigation unit and Sandra Darnell in the Asset Forfeiture Office in October 2014 to determine whether they had additional records responsive to plaintiff's request. (Plaintiff asserts in his brief that Raschella, Myrland and Darnell are agency employees with whom Schultz and Miller may have had email contact about the forfeiture action. Dkt. #21 at 21-22.) The additional search did not turn up any new documents.

OPINION

Plaintiff contends that defendant failed to conduct a reasonable search for documents that may be responsive to his request under the Freedom of Information Act and improperly withheld certain documents in violation of the statute. Because Freedom of Information Act cases, including this one, usually involve only a legal dispute about whether the government conducted a reasonable search or is justified in invoking an exemption, they are typically decided at the summary judgment phase. E.g., Enviro Tech International, Inc. v. United States EPA, 371 F.3d 370, 373 (7th Cir. 2004); Solar Sources, Inc. v. United States, 142 F.3d 1033, 1036 (7th Cir. 1998); Wright v. OSHA, 822 F.2d 642, 644 (7th Cir. 1987). The court may grant summary judgment in favor of the agency in such cases "if 'the agency affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed.'" Patterson v. IRS, 56 F.3d 832, 836 (7th Cir. 1995) (quoting PHE, Inc. v. Department of Justice, 983 F.2d 248, 250 (D.C. Cir. 1993)).

A. Reasonableness of Record Search

In responding to a request under the statute, the agency must conduct a search that is "reasonably calculated to uncover all relevant documents." Matter of Wade, 969 F.2d 241, 249 n. 11 (7th Cir. 1992) (citing Weisberg v. United States Department of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). "The issue is not whether other documents may exist, but rather whether the search for undisclosed documents was adequate." Id. To support its

claims of compliance, the agency may rely on "reasonably detailed nonconclusory affidavits submitted in good faith."  Id.  See also Becker v. IRS, 34 F.3d 398, 405 (7th Cir. 1994) (agency may establish reasonableness of search through affidavits); Moore v. FBI, 366 Fed. Appx. 659, 661 (7th Cir. 2010) (same).  If the agency provides the required affidavits, the burden shifts to the requester to raise a material factual issue concerning the reasonableness of the search, which can be done by "contradicting the [agency's] account of the search procedure or by raising evidence of the [agency's] bad faith."  Miller v. United States Department of State, 779 F.2d 1378, 1384 (8th Cir. 1985).  When determining whether the agency's search was reasonable, the facts are viewed in the light most favorable to the plaintiff.  Becker, 34 F.3d at 405 (citing Zemansky v. EPA, 767 F.2d 569, 571 (9th Cir. 1985)).

To demonstrate that it conducted an adequate search, defendant has submitted the affidavits of Schultz and Gulas, who both describe in detail the search they conducted for documents responsive to plaintiff's request.  Plaintiff criticizes defendant's search on several grounds.  He contends that Gulas's affidavit does not "sharply distinguish" Gulas's efforts from those of Lahabi.  However, Gulas avers that she was in charge of the search, served as Lahabi's reviewer and personally directed Lahabi to contact Schultz and Miller.  Although Gulas does not specify whether it was she or Lahabi who talked to Jackson, such detail is not necessary.  "An affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who participated in the actual search."  Carney v. United States

7

Department of Justice, 19 F.3d 807, 814 (2d Cir. 1994) (citing Maynard v. CIA, 986 F.2d 547, 560 (1st Cir. 1993); SafeCard Services, Inc. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991)).

Plaintiff also points out that some of the documents show that Schultz and Miller communicated with Jackson, Raschella and Myrland about the administrative forfeiture of plaintiff's assets, but Gulas never asked these individuals whether they had any documents responsive to the record request. However, after learning of plaintiff's concern on summary judgment, Gulas contacted Jackson, Raschella and Myrland and confirmed that they did not have any additional responsive documents. Although plaintiff seems to take issue with the fact that defendant did not produce these and most of the other documents until after he filed suit in this court, "continuing discovery and release of documents does not prove that the original search was inadequate, but rather shows good faith on the part of the agency that it continues to search for responsive documents." Landmark Legal Found. v. EPA, 272 F. Supp. 2d 59, 63 (D.D.C. 2003). See also Cornucopia Institute v. United States Department of Agriculture, 560 F.3d 673, 675 (7th Cir. 2009) (release of records during litigation mooted plaintiff's FOIA claim).

Similarly, plaintiff asserts that defendant should have searched the Criminal Investigation Management Information System (CIMIS), a database that tracks the status and progress of criminal investigations and the time expended by special agents. He also criticizes Gulas for not searching defendant's internal email system or explaining how the agency stores its emails. Defendant notes in its reply brief that it searched CIMIS and found

one responsive record that it turned over to plaintiff. Dkt. #24 at 6 (citing dkt. #26 at 00013-20). It also submitted a supplemental affidavit from Gulas, explaining that defendant does not have a central email server that can be searched remotely. Dkt. #25 at ¶ 6. Instead, the agency has several locally-based servers on which emails are retained for only six months. Id. As a result, Gulas asked each of the employees involved in the forfeiture action to search their own emails for any they may have chosen to retain in their personal archive. Id. at ¶ 7.

Plaintiff's remaining arguments amount to nitpicking and have no support in the record. For example, he questions whether Miller was asked to search for documents that were not emails, finds it suspicious that Schultz has provided only those communications that she "retained" and accuses defendant of foul play because some of the emails between Miller and Schultz appear to him to be truncated or cut off. However, "a search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." Meeropol v. Meese, 790 F.2d 942, 956 (D.C. Cir. 1986). Further, "[a] requester is entitled only to records that an agency has in fact chosen to create and retain." Yeager v. DEA, 678 F.2d 315, 321 (D.C. Cir. 1982). The affidavits submitted by defendant show that the search was thorough and reasonable in light of plaintiff's request, which was limited to a mistaken administrative forfeiture action that defendant terminated after one month. Patterson, 56 F.3d at 841 (finding same).

Although it is clear that plaintiff believes that defendant's search "should have" yielded additional unspecified documents, he relies on nothing more than mere speculation. Matter

of Wade, 969 F.2d at 246 (without evidence of bad faith, veracity of government's submissions should not be questioned); Safecard Services, Inc., 926 F.2d at 1200 (government's declaration accorded "presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other records'"). As previously discussed, plaintiff has not supported his contentions with any proposed findings of fact or raised a genuine issue of material fact with respect to the adequacy of the record search by responding to defendant's proposed findings of fact. Without more, plaintiff cannot show that defendant acted in bad faith or that he is entitled to further discovery on the matter. Carney, 19 F.3d at 812 (quoting Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978) ("Discovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face. When this is the case, the district court may 'forgo discovery and award summary judgment on the basis of affidavits.'")). (I also note that plaintiff had ample time to conduct discovery in this case and failed to do so. As Magistrate Judge Stephen Crocker noted in an order entered on September 19, 2014, the court set a discovery period from May 23, 2014 to September 5, 2014. Dkt. #7 at 2. Plaintiff never served any discovery requests on the government. Instead, two days before discovery ended, plaintiff filed a motion for an order finding that the government had not met its disclosure obligations under the Freedom of Information Act, the very relief that plaintiff was seeking in his complaint. Dkt. ##9-10.)

B.  Exemptions

Under the Freedom of Information Act, agencies are required to make their records available to the public unless there is a specific exemption.  5 U.S.C. § 552(d); United States Department of Defense v. Federal Labor Relations Authority, 510 U.S. 487, 494 (1994).  Exemptions are to be narrowly construed, Matter of Wade, 969 F.2d at 246, and the IRS bears the burden of proving that the documents it withholds are exempt.  5 U.S.C. § 552(a)(4)(B); Becker, 34 F.3d at 402.  The requester has no burden to disprove these propositions. Department of Justice v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989); 5 U.S.C. § 552(a)(3)(A).  See also United States Department of State v. Ray, 502 U.S. 164, 173 (1991) (The "strong presumption in favor of disclosure [under the Freedom of Information Act] places the burden on the agency to justify the withholding of any requested documents.").

Although the statute authorizes courts to examine documents *in camera* when reviewing the propriety of an agency's withholdings, 5 U.S.C. § 552(a)(4)(B), the Court of Appeals for the Seventh Circuit has held that "a district court does not abuse its discretion in denying *in camera* review of records when affidavits submitted by the Government '(1) describe the withheld documents and the justifications for non-disclosure with reasonably specific detail, (2) demonstrate that the information withheld falls logically within the claimed exemption, and (3) are not controverted by either contrary evidence in the record or by evidence of bad faith.'"  Silets v. United States Department of Justice, 945 F.2d 227, 229 (7th Cir. 1991) (quoting Kimberlin v. Department of Treasury, 774 F.2d 204, 210 (7th Cir. 1985)).  As

11

explained below, Gulas has described the withheld and redacted documents with reasonably specific detail. A brief review of the redacted documents and Gulas's justifications for non-disclosure reveals that the withheld information fits logically within the claimed exemptions. As noted above, there is no evidence of bad faith in this case. Id. at 231 ("[T]he mere allegation of bad faith does not undermine the sufficiency of agency submissions. There must be tangible evidence of bad faith; without it the court should not question the veracity of agency submissions."). As a result, I conclude that an *in camera* review of the documents in question is not warranted.

Defendant has withheld four full documents and redacted portions of 28 pages from other documents on the ground that the contents are subject to exemptions under the Act. Plaintiff opposes defendant's claims only with respect to a few redactions located on what the parties have identified as Bates numbered pages 000001-02, 000145, 000040-44, 000054, 000088, 000113-117. Defendant's claimed exemptions with respect to these redactions fall into three categories: (1) information withheld under 5 U.S.C. §§ 552(b)(6) and (7)(C) to protect the personal privacy of third parties and agency employees; (2) information withheld under §§ 552(b)(5) because it relates to the agency's deliberative process; and (3) information withheld under §§ 552(b)(3) and (5) to prevent disclosure of privileged information and grand jury proceedings. (Although plaintiff also objected to defendant's redactions to document number 000091, defendant has produced an unredacted copy of that document. Dkt. #24 at 16.) I will discuss the exemptions below.

1. <u>Deliberative process</u>

The deliberative process exception to FOIA permits an agency to withhold from public disclosure records relating to the agency's internal evaluation and formulation of policy. <u>Enviro Tech</u>, 371 F.3d at 372. Specifically, § 552(b)(5) protects communications that are "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." Therefore, "if a private litigant could not obtain certain records from the agency in discovery, Exemption 5 relieves the agency of the obligation to produce those documents to a member of the public." <u>Enviro Tech</u>, 371 F.3d at 374. "One such rule that Exemption 5 does incorporate is that documents reflecting the deliberative or policy-making processes of governmental agencies are privileged from disclosure." <u>Id.</u> To qualify for the deliberative process privilege, a document must be both predecisional, that is, it must actually predate the adoption of an agency policy, and deliberative in that it is related to the process by which policies are formulated. <u>Id.</u> The Court of Appeals for the Seventh Circuit has applied this privilege in situations analogous to those in this case, where the deliberative communications relate not to the creation of an agency policy but to the way an agency should make a decision in a particular case. <u>United States v. Farley</u>, 11 F.3d 1385, 1389 (7th Cir. 1993) (citing <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 151 (1975)). See also <u>Kennedy v. United States Equal Employment Opportunity Commission</u>, 2014 WL 4908716, at *4 (S.D. Ind. Sept. 29, 2014) (noting same).

Gulas avers that defendant redacted one sentence from an April 28, 2014 email from Miller to Raschella, dkt. #26 at 2, because it identified an alternative action that the agency could take with respect to the evidence seized from plaintiff's residence in the ongoing criminal investigation of plaintiff. Although plaintiff suggests that the "gist of the email" is to deflect blame and not discuss agency policy, that is pure speculation. Any statement made by Miller about a possible alternative course of action against plaintiff would be deliberative, and the fact that he made the statement during an active criminal investigation makes it predecisional.

Gulas also states that defendant redacted one sentence from an August 22, 2013 email in which Schultz poses a question to Miller about how to proceed with the administrative forfeiture. Because the email was sent before the initiation of the asset forfeiture action against plaintiff, it is predecisional. A question concerning next steps would be exempt because it is considered deliberative in nature.

2. Privacy

Gulas avers that defendant redacted a third party's name from document number 000145 because that party had no involvement in the seizure of plaintiff's assets. Section 552(b)(7)(C) exempts from disclosure "records or information compiled for law enforcement purposes . . . to the extent that the production . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." Under this exception, a government agency may edit the names and identifying information of private parties from documents that

14

otherwise reveal the operations and activities of the agency. Silets, 945 F.2d at 229. Further, § 552(b)(6) exempts "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Courts have made clear that "[a] clear privacy interest exists with respect to such information as names, addresses, and other identifying information even where such information is already publicly available." Rugiero v. United States Department of Justice, 257 F.3d 534, 550 (6th Cir. 2001). See also Dean v. FDIC, 389 F. Supp. 2d 780, 792 (E.D. Ky. 2005) ("exemption obviously permits the defendants to redact the names, addresses and 'other identifying information' of third parties"). Plaintiff offers no reason why these exemptions should not apply, and I see none.

3. Attorney-client, work product and grand jury information

Defendant has withheld two copies of a one-page memorandum from the Special Agent in Charge of the St. Paul Field Office to the Area Counsel, Criminal Tax, requesting legal advice on the proposed direction of the case and two copies of the responding legal memorandum from Area Counsel, Criminal Tax. Defendant contends that these documents are subject to the attorney-client privilege and work product doctrines that fall within exemption 5. It also points out that § 552(b)(3) exempts from disclosure any document that is exempted from disclosure by another statute. According to Gulas, the response memorandum reveals the subject of the grand jury investigation against plaintiff, which is protected from public disclosure under Fed. R. Crim. P. 6(e).

Plaintiff does not oppose the general application of these exemptions but argues that defendant has failed to meet its burden of establishing that the memoranda do not contain any unprivileged material. However, Gulas makes clear in her affidavit that she is familiar with the statutory requirement that any nonexempt information be disclosed and that she released to plaintiff "every reasonably segregable non-exempt portion of every responsive document." Dkt. #15 at ¶ 12. See also Mervin v. FTC, 591 F.2d 821, 826 (D.C. Cir. 1978) (finding *in camera* review unnecessary where agency submitted sworn affidavit that satisfied court that any factual material contained in legal memoranda incidental to and bound up with discussion of litigation strategy).

In sum, I find that defendant has met its burden of establishing that the materials it withheld are exempt under the statute. As a result, I am granting defendant's motion for summary judgment.

ORDER

IT IS ORDERED that defendant Internal Revenue Service's motion for summary judgment is GRANTED. The clerk of court shall close this case and enter judgment in favor of defendant.

Entered this 22d day of December, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge